## JACOB EARLY v. JOSIAH ZEIDERS.

APPEAL BY W. J. ZEIDERS FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 2, 1890—Decided October 6, 1890.
[To be reported.]

(*a*) A judgment, in which there was no waiver of inquisition or exemption and no provision for attorney's commissions, was amicably revived with such waivers and with the addition of a collection fee, the amicable scire facias correctly reciting and identifying the original judgment:

Statement of Facts.

1. The additions to the original judgment, thus introduced into the revival, did not constitute such a variance or departure from it as to render the revival ineffectual to preserve its lien, and the rule laid down in Dietrich's App., 107 Pa. 174, was inapplicable to the facts.

2. Being regular in other respects, the revival preserved the original lien; but the additional stipulations introduced into the revival could not be enforced to the injury of any existing lien creditor, though they were enforceable against the defendant and creditors acquiring liens subsequently.

Before PAXSON, C. J. STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 11 May Term 1890, Sup. Ct.; court below, No. 39 September Term 1889, E. D., C. P.

On September 19, 1889, the sheriff of Dauphin county sold certain real estate as the property of Josiah Zeiders, at the suit of Jacob Early. The fund arising from the sale, amounting to $400, was by agreement treated as paid into court, and on September 30, 1889, *Mr. Lewis M. Neiffer* was appointed auditor to make distribution thereof.

Two claimants to the fund appeared before the auditor. William J. Zeiders claimed it under a judgment against the defendant originally entered in favor of John Baumgardner on March 28, 1874, for $1,527.37; revived by amicable scire facias on March 11, 1879, for $1,200; again revived in like manner in favor of Baumgardner's executors for $1,200, on March 7, 1884; assigned, on August 27, 1886, by the plaintiff's executors to William J. Zeiders; and finally revived by amicable scire facias, on February 26, 1889, in favor of said executors for the use of William J. Zeiders. The agreement, in pursuance of which the revival last mentioned was entered, recited the last preceding revival, correctly giving the names of the parties, the number and term, and the amount of the judgment; correctly ascertained the accrued interest on the judgment debt, finding the amount due on March 11, 1889, to be $1,560, and then proceeded as follows:

" It is hereby agreed that the prothonotary of said court enter an amicable scire facias to revive and continue the lien of the above judgment with the same effect as if a scire facias to revive the same had been regularly issued, served personally on the defendant by the sheriff of said county, and duly so re-

turned; and that a judgment be entered thereon in favor of the plaintiff and against the defendant for the sum of fifteen hundred and sixty dollars, with costs of suit, release of errors, without stay of execution, and with waiver of the right of inquisition and exemption laws now passed or hereafter to be passed, together with an attorney's commission of five per cent for the collection thereof. Interest from March 11, 1889.

Dated, February 26, 1889.

"Josiah Zeiders,  [L. S.]
"W. J. Zeiders,    [L. S.]"

Neither the original judgment in favor of Baumgardner, nor the revivals thereof entered in 1879 and 1884, contained any waiver of inquisition or of exemption, nor did they contain any provision for the payment of attorney's commissions.

Jacob Early claimed the fund by virtue of a judgment in his favor against the defendant, entered July 5, 1878, and revived upon a writ of scire facias issued November 28, 1885, judgment of revival being entered January 5, 1886, in the sum of $347.15. The sheriff's sale by which the fund in controversy was produced, took place in pursuance of a writ of fieri facias, levy, condemnation, and writ of venditioni exponas, under this judgment.

The auditor reported, finding that the Baumgardner judgment, owned by William J. Zeiders, was regularly revived, and therefore prior in lien to the Early judgment, and accordingly awarded the fund for distribution, after deducting costs, to the former judgment. Early thereupon filed exceptions to the auditor's report, complaining that the auditor erred, inter alia:

2. In finding the revival of the Baumgardner judgment, entered in 1889, to be regular.[2]

3. In awarding the fund to William J. Zeiders.

The exceptions, having been filed with and overruled by the auditor, and afterwards renewed before the court, were disposed of in the following opinion, McPherson, J.:

Two judgments claim this fund, one now owned by W. J. Zeiders, and the other owned by Jacob Early. The present lien of Early's judgment dates from January 5, 1886, while the judgment owned by W. J. Zeiders, was entered March 28,

1874, and is therefore first in right, if its subsequent revivals, which were all seasonably made, were in other respects regular. The last revival was entered February 26, 1889, and this alone need be considered.

[In our opinion it was irregular and did not continue the lien. The original judgment, and the revival of 1879 and 1884, contain no waiver of the exemption laws, and no provision for an attorney's collection fee, while the revival of 1889, contains both these provisions. These substantial additions to the original judgment are a material variance, and therefore break the continuity of its lien in favor of other liens existing at that date.] [1] The strictness with which revivals are watched by the courts, so as to insure undoubted record evidence that the revival and the original are identical transactions, may be seen in Dietrich's App., 107 Pa. 174, and the cases there cited.

The second exception is sustained; the award to W. J. Zeiders is set aside, and the balance applicable to liens, viz., $364, is now decreed to Jacob Early upon his judgment, No. 58 January Term 1886. As to costs, the report is confirmed.

—Thereupon William J. Zeiders took this appeal, specifying that the court erred:

1. In its conclusion of law embraced in [ ] [1]

2. In sustaining the second exception [2] and setting aside the award to the appellant.

*Mr. L. W. Hall* (with him *Mr. H. L. Nissley*), for the appellant:

The addition of the words " waiving the right of exemption, and attorney's collection fee," in the revival, do not mislead purchasers or creditors, if the revival correctly recites the judgment to be revived, and substantially identifies it as to parties, date and amount. In this case, the revival of February 26, 1889, correctly gives everything necessary to put purchasers and lien creditors on notice: Fogelsville L. & B. Ass'n's App., 89 Pa. 293; Beshler's Est., 129 Pa. 268; Mellon's App., 96 Pa. 475. Our claim is in perfect accord with Dietrich's App., 107 Pa. 174. If the matters complained of are irregular, no one but the defendant can take advantage of the irregularity: Dougherty's Est., 9 W. & S. 189; therefore, the revival was good against the defendant, and continued the

lien, of which he is not complaining and of which no one else can complain: Edwards's App., 66 Pa. 89; Richter v. Cummings, 60 Pa. 441; Beshler's Est., 129 Pa. 268.

*Mr. R. S. Care*, for the appellee:

1. When a judgment provides for the payment of attorney's commissions, they are a part of the judgment in favor of the plaintiff; they belong to him, not to the attorney, and a separate judgment cannot be had in favor of the attorney: McAllister's App., 59 Pa. 204; Daly v. Maitland, 88 Pa. 386; Faulkner v. Wilson, 3 W. N. 339; Schmidt's App., 82 Pa. 527. Therefore, the effect of the addition of an attorney's commission of five per cent, in the revival of 1889, was a variance in the amount of the judgment, and the judgment of 1884 and the revival of 1889 cannot be identical transactions. In various supposable cases, such an addition of attorney's commissions would operate, if allowed, to the prejudice of contemporaneous or subsequent lien creditors. In this case, it rendered the revival irregular and invalid as against Early: Dietrich's App., 107 Pa. 174; Richter v. Cummings, 60 Pa. 441; Arrison v. Commonwealth, 1 W. 374. If the irregularity is amendable, the amendment cannot affect Early's rights: Arrison v. Commonwealth, supra.

2. There was another addition made in the revival of 1889, viz., the waiver of the exemption laws. In other words, by giving the appellant three hundred dollars worth of additional property as security for his judgment, this waiver in effect varied the amount secured. This was such a material alteration, furthermore, as disturbed the legal effect of the judgment as against Early, whose revival dates from January 5, 1886, and who therefore was without notice of these changes. There was still another change: the inquisition laws were waived; whereas Early, when he issued on his judgment, was subjected to the delay and expense of an inquisition, etc. To reach the conclusion contended for by the appellant, that there is nothing to show that the revival of his judgment was a different transaction from the original, we must say that all these additions are mere formalities or technicalities, not prejudicial to subsequent creditors. But these additions are material alterations, and an improper tampering with the record: Kimmel's

App., 91 Pa. 471; Henderson v. Henderson, 133 Pa. 399; Kountz v. Kennedy, 63 Pa. 191.

OPINION, MR. JUSTICE WILLIAMS:

The fund for distribution in this case was raised by the sale by the sheriff of the real estate of Josiah Zeiders. It is claimed by each of two judgment creditors, upon the ground that his judgment is the first lien on the land sold. The appellant's judgment was entered in March, 1874, and has been regularly revived at proper intervals to continue the lien, the last of the series of revivals having been entered in February, 1889, while the sheriff's sale took place in September, 1889. The other claimant is Jacob Early, whose judgment was entered in July, 1878, and revived in November, 1885. The auditor held that the appellant's judgment was entitled to the fund, because it was the older lien, and had been kept in force by the several revivals, so that its priority was preserved. The learned judge of the court below reversed the auditor, holding that the last revival of the appellant's judgment, in February, 1889, was irregular, and that, in consequence of such irregularity, the lien was not continued, but must be treated as beginning on the date of the revival. For this reason, he awarded the fund to the Early judgment. The only inquiry to be made in this case, therefore, is into the regularity of the revival of the appellant's judgment in February, 1889.

The judgment of revival was entered by the prothonotary by virtue of the authority contained in an amicable scire facias, signed by both plaintiff and defendant. This paper correctly recited the judgment to be revived as No. 143 of April Term 1884, in the Common Pleas of Dauphin county. It gave the names of the legal and use plaintiffs, and the name of the defendant, just as the record showed them to be. It stated the debt exactly as it appeared at No. 143 of April Term, 1884, made a calculation of the accrued interest, and, by putting interest and debt together, made the new principle for which judgment was to be entered. It then authorized the prothonotary to enter the new judgment, with the same effect as if a writ of scire facias had been issued and returned with personal service on the defendant. This was a regular and formal amicable scire facias, which authorized the judgment of revival

entered by the prothonotary. At the foot of the paper was added a clause containing a " waiver of the right of inquisition and exemption laws now passed, or hereafter to be passed, together with an attorney's commission of five per cent for the collection thereof; " and this is the irregularity or departure which influenced the action of the court below. It is not alleged that the amicable scire facias omits any necessary stipulation, or departs from the record in any of its recitals affecting the judgment to be revived, but that it contains additional stipulations in relation to the collection of the debt.

The learned judge said, in his opinion overruling the auditor: " The original judgment, and the revivals of 1879 and 1884, contain no waiver of the exemption laws, and no provision for an attorney's collection fee, while the revival of 1889 contains both these provisions. These substantial additions to the original judgment are a material variance, and therefore break the continuity of its lien in favor of other liens existing at that date." In support of this conclusion, he cites Dietrich's App., 107 Pa. 174. But the rule laid down in that case is not applicable on the facts of this case. It was there held that, " in order to continue the lien of a judgment, the scire facias to revive must correctly recite the original judgment, and substantially identify it as to parties, date, and amount." In all these particulars, the amicable scire facias in this case is unexceptionable. It identifies the judgment, the lien of which it proposes to continue, by a recital of the parties, the date, and the amount which is absolutely correct; and it omits no particular that could aid in the work of identification. If the words thought to make a variance were omitted, it would not be doubted that all the requisites of a good amicable scire facias would be present. Since this is so, it is important to inquire into the legal effect of the additional words. They do not disturb the identification of the judgment to be revived, nor do they profess to refer or relate to it, but to add to the security afforded by the judgment by a waiver of the right to inquisition and exemption upon it, if process should be required for its collection, and an undertaking to pay a commission to the plaintiff's attorney of five per cent for services in collecting it. This is an additional stipulation intended to increase the value of the security afforded by the judgment as revived, and, as between the parties

to it, is clearly a valid and binding one. If, at the time of the revival, the defendant had become indebted to the plaintiff in an additional sum, we see no reason why, as between the parties, the additional debt might not be added to the amount of the judgment to be revived, and one judgment entered covering the entire indebtedness. As to existing lien creditors, the judgment would be a new one for the amount of the new debt; but the lien of the former judgment would not be lost by the consolidation as to the amount actually due upon it. Whether, under such circumstances, the old judgment shall be revived for the old debt, and a new judgment entered for the new one, or both sums be united in one, by putting into the amicable scire facias a stipulation that the new debt be added to the old, and one judgment entered for the entire amount due, is a question to be decided by consideration of convenience to the plaintiff, and economy to the defendant.

So long as the rights of other persons are not involved, it is competent for the parties to do as it may seem best to them; but it is equally clear that it is not in their power to prejudice or impair the rights of existing judgment creditors by the agreements they make with each other. The holder of a prior lien cannot add to its amount, or change its situation, to the prejudice of any creditor who has a valid lien at the time when such addition or change is attempted; but, if he has an additional demand against the defendant, whether he takes a new judgment therefor or adds it to a prior judgment upon revival by amicable scire facias, it is a new lien for the new debt, in either case, as to all existing lien creditors. He cannot tack his new debt upon the lien of his old judgment; nor will the law tack his old judgment to the new debt, and so deprive him of the benefit of its lien, but will look into the lien of the new judgment with reference to the rights both of the parties to it, and the other lien creditors of the defendant. The stipulation to pay a commission of five per cent cannot be enforced to the prejudice of liens existing when it was entered into; but, subject to this consideration, it is enforceable against the defendant and creditors whose liens were subsequent to the entry of this stipulation on the record. The same thing may be said as to the waiver of the right of exemption. If it should appear that this waiver operated to the injury of any existing lien creditor, he

should be heard upon that subject; but, as between the parties, as we have already said, it is binding, as it would also be on subsequent judgment creditors. These stipulations had, therefore, no effect upon the appellant's judgment that could deprive him of his lien for the debt, interest, and costs due upon it; and the learned judge of the court below was in error in holding that they amounted to a variance or departure from the original judgment, and deprived it of its lien.

　　　　　　The decree of the court below is reversed; the report of the auditor is confirmed, and distribution ordered in accordance therewith.